COVENANT.

# Kentucky and Louisville Mutual Insurance Company *vs* Southard.

*Case* 157.

## ERROR TO THE JEFFERSON CIRCUIT.

*Insurance. Fraudulent representations. Pleading.*

*July* 15.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

The case stated and judgment of Circuit Court.

THIS action of covenant was brought by Southard to recover for the destruction by fire, of his dwelling house, insured by the Kentucky and Louisville Mutual Insurance Company. The policy on which the action is founded, insures the plaintiff to the amount of $7,000, against loss by fire from the 6th day of March, 1841, to the 6th day of March, 1847, upon his " one story brick mansion house, situated, &c. adjoining the city of Louisville, lately occupied by James Southard, &c.; a mortgage on the building and the land on which it stands, in favor of James Burks for $3,500. The aforesaid building is occupied as a dwelling house." And it is provided that " if the premises aforesaid shall at any time when a fire may happen, be occupied in whole or in part for purposes more hazardous than that which exists at the date hereof, unless liberty so to occupy, &c., be expressly given in writing on this policy, every clause, article, &c. to be wholly void. Reference being had to the application of the said Southard, and survey filed, for a more particular description, and as forming part of this policy." In the condition, or terms annexed to the policy, it is stated, that insurance is in no case made on more than two thirds of the value of any building, and that in case of total loss, the company is not liable to pay more than two thirds of the actual value of the building at the time of loss.

The declaration, after setting out the policy at large, avers that the said mansion house was at the date of the policy, and at the time of its destruction by fire, of great value, viz: of the value of $12,000 ; that the said house and the land on which it was situated, were at the date of the policy, and always thereafter, the property of the plaintiff, subject to the mortgage to Burks, and to two mortgages subsequently made; that at the date of the policy, and afterwards until it was destroyed by fire, the said house was, and continued to be occupied as a dwelling house, and that it was not at the time of the fire, occupied for any purpose more hazardous than existed at the date of the policy ; that the plaintiff did, in good faith, make a fair and full representation to said company, of all facts and circumstances within his knowledge touching or affecting the risk of said property, and did fully and fairly disclose to them the true state of the title of said property and the incumbrances thereon according to his best information and knowledge ; and did in all respects comply with the duties incumbent on him by law. The plaintiff then avers, that on the morning of the 1st of March, 1847, the said mansion house was burnt and wholly destroyed by fire, which fire was by misfortune, and was not caused by any design nor act of the plaintiff, nor occasioned by any public enemy, &c., but was occasioned by some accident or casualty in a manner unknown to him, and that he lost thereby a large sum, viz: $12,000; that notice was on the same day given to the company, with demand of payment, whereupon said company, by a resolution of the board of directors, determined to refuse payment, and had failed and refused, &c.

The defendants demurred to the declaration, and at the same time filed pleas 1, 2, 3 and 4, to which the plaintiff demurred. And the declaration having been adjudged good, and the pleas bad, time was given to the defendant to plead de novo. At a subsequent term the defendant filed pleas 5, 6 and 7 ; to the first of which the plaintiff replied by way of traverse, on which issue was joined ; and to the two others he filed demurrers, which were sustained. The defendant then offer-

INSURANCE COM-
PANY
*vs*
SOUTHARD.

ed plea number 8, said to be in lieu of his demurrer to the declaration, which had been overruled. But the Court would not allow it to be filed, and the defendant having excepted to the refusal, a trial was had upon the issue made upon the 5th plea, and a verdict and judgment were rendered for the plaintiff for $6,804 43. The defendants' motion for a new trial was afterwards overruled, and they have brought the case to this Court for revision, questioning by the assignment of errors; the correctness of the several opinions of the Court in overruling the demurrer to the declaration, and in sustaining the demurrers to pleas 1, 2, 3, 4, 6, 7, and in refusing to allow plea number 8 to be filed, as well as of the opinions given during the progress of the trial, and on the motion for a new trial.

If a demurrer &
pleas be filed to-
gether, and the
demurrer over-
ruled to the dec-
laration, and sus-
tained to the
pleas, and time
taken to plead a-
gain and new
pleas offerd, the
demurrer is wai-
ved to the decla-
ration.
When a plea up-
on which issue
is made and tri-
ed contains the
same matter of
to defence as one
which a demur-
rer is sustained,
the error is not
available.

We are inclined to the opinion, that the defendants must be understood to have waived their demurrer to the declaration, and to have withdrawn their four first pleas, by taking time to plead *de novo*, and by offering new pleadings under the privilege thus allowed. But as the questions on all of the demurrers were elaborately argued here, we shall notice them all.

The declaration seems to contain every averment, both affirmative and negative, which is necessary either under the policy or the charter of the company, to show that the defendants were bound to pay the loss which had occurred. And the objection that the suit was brought within the thirty days allowed to the company by the charter having been expressly waived in the Circuit Court, we are satisfied that upon the face of the declaration the plaintiff shows a good cause of action. The matter of the 4th plea, so far as it is a valid defence, being contained in the fifth, on which the cause was tried, the defendant was not prejudiced by the decision on the demurrer to the 4th plea, even if it was erroneous.

2. Then as to the three first pleas, they stand upon the assumption that the application of Southard for insurance, and the survey of the building being referred to in the policy as forming a part of it, are to be taken as if they were actually inserted in it, and that every des-

criptive statement of the property contained in either of them, is by the law of insurance a warranty, the breach or untruth of which in any particular, whether material to the risk or not, avoids the policy.

But in the first place it is questionable whether even in the law of marine insurance, the principle which converts into a warranty every matter of fact or description relative to the property insured, which the parties have inserted in the policy, is to be applied to any such matter not inserted in the policy nor written upon it, though it be referred to therein as a part of the policy. For the question might still arise, for what purpose is it made a part of the policy, and why was it not inserted in it? In ordinary contracts such matter, though actually inserted in the written memorial, has not necessarily, the force of a covenant or warranty. In marine insurances, it acquires the force of a warranty from the very fact of being inserted in the policy. And as the insurer may insert so much of the applicant's description or statement as he intends to have the force of a warranty, there is room for the inference that so much as is not inserted is intended to have the effect of a representation merely, and is referred to as such. The general rule is well settled that an express warranty must appear on the face of the policy, and that instructions for insurance, unless inserted in the policy itself, do not amount to a warranty. So a memorandum upon a paper attached to the policy by a wafer, or rolled up in it, when it was shown to the under writer and executed by him, has been held not to be a warranty but a representation merely. These positions are fully sustained by the cases stated in the notes, pages 11 and 12 of *Douglass' Reports.* Chancellor Walworth in *Snyder* vs *Farmer's Loan Company*, (16 *Wend.* 481,) admitting that the parties might, by stipulation, inserted in the policy, give the effect of a warranty to a statement of facts contained in a separate paper, maintains the opinion that, (in the absence of such stipulation,) the principle which converts every thing in the policy into a warranty, is not to be extended to any thing not contained in the policy or written on the same

*Insurance Company vs Southard.*

The general rule in policies of insurance is, that a warranty must appear on the face of the policy and no instructions are regarded as warranties, unless inserted in the policy—they are merely representations.

paper. And in *Delonguemen* vs *The Tradesman's Insurance Company*, (2 *Hall*, 589,) Chief Justice Jones and Judge Oackley, upon the authority of the cases just referred to and others, express the same opinion: (1 *Cond. Marsh.* 349, 451; 3 *Kent's Com.* 235; 13 *Mass. Rep.* 96; 3 *Dowl.* 255.)

But in the second place. Whatever might be the doctrine in case of marine policies, in making which the insurer is in general, wholly dependent upon the statements of the insured, with regard to the property and the risk, it has been seriously doubted (by Chancellor Walworth *ubi supra*,) and so far as we know, has not been established by judicial decisions, whether "the principle of construing every matter of mere description contained in the body of the policy into a warranty, should be applied with the same strictness to *fire policies*, where the misdescription is most generally the the mistake of the under writer's own surveyor." And in the third place. These warranties being conditions precedent, which must be performed or be true, however immaterial, there is an obvious propriety that they should be contained in the policy which is to be kept by the insured, not only that he may be enabled to make the proper averments when he comes to declare, but that he may be fully apprised of the effect intended to be given to his statements. Since if they are considered merely as representations, it is sufficient that they were made without fraud and are substantially true in every point material to the risk.

Under these considerations we are of opinion that it is at least safe to conclude that the reference in this policy to the application and survey as a part thereof, being a part of the clause which vacates the policy if the premises should, at the time of any fire, be occupied for purposes more hazardous than at the date of the instrument, should be understood as merely identifying the description and condition of the property at that time, for the purpose and as the standard of comparison in case of fire; that no other force or effect was intended to be given to the writings referred to, than as being a description of the nature or purposes of the occupa-

tion of the building at the time; and that as the clause points expressly to the sort of variance against which it intends to guard, (viz: a more hazardous occupation,) and declares expressly the consequence of such variance, these declarations should be regarded as expressing the entire scope and object of the reference, beyond which it cannot be carried without violating the apparent intention of the parties. The entire clause including the reference to the application and the survey, was intended to secure the insurers from loss by a change in the occupancy of the premises which should increase the risk and not to bind the other party to the truth of immaterial statements not affecting the risk, nor to preclude him from changes either in the plan or occupation of the premises, unless the hazard should be thereby increased. And the written application and survey were referred to as fixing the standard of comparison, and not for the purpose of creating or evidencing any covenant or warranty on the part of the insured, as to the condition or occupation of the premises at the time the insurance was made. The only covenant or warranty on this subject, is contained in that part of the policy which describes the building as a mansion situated, &c., and states that it was then occupied as a dwelling house. The facts alledged in these pleas, that one room was occupied as a kitchen, cannot be taken as a breach of this warranty.

Since then the statements made in the survey or even in the plaintiff's application for insurance, are not warranties, these pleas do not, in alledging the untruth of those statements, show a breach of warranty, and are, therefore, insufficient on that ground, to avoid the policy or bar the action. But although the pleas alledge a warranty and a breach of it, they should perhaps be deemed substantially good if they show such a misrepresentation as should avoid the policy. Considered in this view, the application and survey may be regarded as representations, and the alledged breach of warranty as an averment of the untruth of the representation. But in order to make the pleas good in this aspect, they should show not only the untruth of the representation,

*Insurance Company vs Southard.*

*The statements made in the survey and application for insurance, are not in general to be regarded as warranties. Though if untrue may amount to such misrepresentation as will avoid the policy, and if relied on in defence, the plea should show the importance and untruth of the representation.*

but its materiality. And this, in our opinion, they fail to show.

The survey referred to in these pleas, state that "the house has eight rooms, all furnished in the most costly manner, and in first rate repair, except the roof. The fire places are all secure. There is a kitchen and negro buildings in the rear, though not connected by about fifteen feet, and there is a cistern in the vacancy with a pump," &c. The breach alledged in the two first pleas, is that one of the eight rooms was, at the date of the policy, and until the house was burnt, used as a kitchen, one of them stating that there was not a kitchen in the rear, the other that the house in the rear was not used as a kitchen. The third plea alledges that the house insured was not used solely as a dwelling house, but one room was used as a kitchen, and the kitchen was not in the rear or connected with the house, and avers that the using of the room in the house as a kitchen, greatly increased the risk, and that the burning complained of was caused by fire from the said room used as a kitchen. This being the strongest of these pleas, will be alone considered.

The question is, whether the plea sufficiently shows the materiality of the alledged variance between the representation and the real fact as averred. It may be admitted that a dwelling house is in more danger of being consumed or injured by fire, if one of its rooms be used as a kitchen, than if no such use were made of any room in it, but the kitchen was in another building unconnected with it.

But it is not admitted that the representation of a house as a dwelling house, is falsified by averment and proof that one of its rooms was used as a kitchen. And we do not regard the statement in the survey, that there was a kitchen and negro building in the rear, as entirely equivalent to a representation that there was no kitchen in the dwelling house. The terms "dwelling house" and "kitchen," have not such a precise and definite import in common use, as that it must be necessarily implied from the statement as contained in the survey, that no room in the dwelling house was used as

kitchen. And although it be admitted that this is the *prma facie* import of the language used, still, as it may have been otherwise intended and understood, and may have been accompanied by a statement or exhibition of other facts, showing clearly that it was not so intended and understood, we are of opinion that in a plea relying on a misrepresentation in this particular, it should have been shown explicitly, that the insurers were, in fact, misled by the representations as made.

But further than this, we are of opinion that a plea attempting to avoid a policy on the ground of misrepresentation, should show clearly that the fact misrepresented was material in view of the policy, and that it is not sufficient merely to show that the actual hazard of loss was greater as the fact existed, than it may have been supposed to be as the fact was represented. Taking the definition of materiality as laid down in 1 *Marshall on Insurance*, 467: "Every fact and circumstance which can possibly influence the mind of any prudent and intelligent insurer, in determining whether he will under-write the policy at all, or at what premium he will under-write it, is material." It is in this view that the expression "material to the risk," is understood to be used in the law of insurance. When, as is probably the case in marine insurances, every insurance is based upon the particular circumstances of each individual case, the misrepresentation of any fact which might enhance the actual hazard or risk of the subject, might be deemed material and fatal, as it might influence the determination of the under-writer as to the rate of premium, if not as to his under writing the policy at all.

But in regard to insurance on buildings against fire, it cannot be assumed that every circumstance of difference, which might upon strict scrutiny, be regarded as causing an actual difference in the hazard of loss, is to be deemed material. It is the known usage of companies professing to insure buildings against fire, to classify them according to certain well defined circumstances of discrimination, founded generally upon the nature of the materials of which the building is constructed, its

*Margin notes:*

INSURANCE COMPANY *vs* SOUTHARD.

A plea avetring a representation that there was a kitchen about 15 feet from the dwelling, does not necessarily imply that it was used as such, and that no part of the dwelling was used as a kitchen, and without other averment showing clearly that the representation was fraudulent and misleading and the hazard increased, the plea is not good.

A difference exists in cases of marine and fire insurances.

situation with respect to other buildings, &c., and the purpose for which it is occupied or the nature of the articles to be kept in it. And the rates of insurance are fixed upon a general estimate of the hazard belonging to each class. And although it does not appear in this record, that the defendants have adopted this usage as a general rule for the estimation of risks, still considering the immense number of the subjects, (houses,) proposed to be insured, their susceptibility of classification in the manner referred to, and the infinite variety of minute circumstances of variation between them, impossible to be all considered or even all represented in every case, it is but reasonable to suppose that this company proceeds in the usual and rational way; and even if it does not, it may be assumed that neither the determination to insure nor the rate of insurance, is affected by every circumstance or difference of whatever character, which may, upon consideration or investigation after a loss, be supposed to have affected the actual hazard. The safety of the insured requires some more certain standard than this; and we are of opinion that the plea relying upon a misrepresentation, must show not only that the fact misrepresented increased the danger or hazard of loss, but that, according to the rules or modes of business of the insurers, it would have enhanced the premium or prevented the insurance, and thus that the insurers were misled by the representation. This plea is defective in not showing either that the alledged representation affected the question or rate of insurance, or that it was fraudulently made with that intent. And although the state of the fact different from the representation may, as averred, have actually increased the risk, the law does not imply the further fact which is necessary to avoid the policy, and which should, therefore, have been stated. It is true that in an action of assumpsit, which is the common form of action upon policies in England, and in some of these States, the jury would, under the general issue, decide upon the materiality of any misrepresentation relied on by the defendant in evidence. But the Court might tell them what in point of law, constituted mate-

riality.   And as, in such case, it would devolve upon the defendant to prove the facts on which the question of materiality might depend, so in the action of covenant it should devolve upon him to state such facts in his plea, as would enable the Court to determine the materiality or fraud of the misrepresentation relied on, or the plea should not be regarded as a valid bar.   We cannot say, upon the face of the plea, that the policy is void because the survey or even the plaintiff represented that there was a kitchen and negro buildings in the rear, when in fact one room of the dwelling house was used as a kitchen.

3.  As already intimated, the 4th plea was substituted by the 5th, which presents more fully the averment that the house was burnt by the design, and with the connivance and fraud of the plaintiff, which matter was decided in favor of the plaintiff by the jury.

4.  The 6th plea seems to be founded on that clause of the policy and of the charter, which declares that the policy shall be void, if the building shall be occupied at the time of any fire, for a purpose more hazardous than at the date of the policy, unless by consent of the insurers, &c.   The plea states that after the execution of the policy, the plaintiff without consent, &c., caused one of the rooms in said dwelling house to be altered, and used the same as a kitchen.   But it does not aver that the use or purpose for which the room was used was altered, nor that it was not used as a kitchen before the date of the policy.   Although, therefore, the plea goes on to say that the use of said room as a kitchen, was a more hazardous occupation of the house than if it had been used wholly as a dwelling house with a kitchen fifteen feet in the rear unconnected, and that the house was burnt by the use of said room as a kitchen; and although it were conceded that the use of one room as a kitchen after the date of the policy, when no room had been so used before, but the kitchen was in a separate building, &c., is such an occupation for a more hazardous purpose, as under the clauses referred to would avoid the policy, still the plea is bad in this aspect, because it does not show a

A plea averring that the building was used for a purpose other than that represented, which increased the hazard, should also show that it was used differently from the manner it was used at the date of the policy; and that the insurance would not have been made at that rate or at all, if the representation had been adhered to.

INSURANCE COM-
PANY
*vs*
SOUTHARD.

change in the use or purpose of occupation of any room in the house, or an occupation after the policy different from what it had been before. And it is ₅bad as a plea, relying upon a misrepresentation, not only because it does not show that the room was used as a kitchen at the date of the policy, and contrary to the representation; but also, (for the reasons already stated in reference to the 3d plea,) because even if it did show this, it does not show the materiality of the misrepresentation, as affecting either the rate of insurance, or the question of insuring at all. It is, however, a sufficient ground of condemnation, that it is wholly uncertain, upon the face of the plea, whether the room was used as a kitchen at the date of the policy, or not until afterwards, and that it consequently fails to make out a case on either ground, for violating the policy.

5. The 8th plea, besides relying upon the alledged misrepresentation as to the locality of the kitchen, and the use of the house, as in former pleas, and the representation that all the fire places were secure, alledges the new fact that the fire place of the room used as a kitchen was not secure, that the use of the said room as a kitchen, and the insecurity of the fire place, was fraudulently concealed, and that the use of said room as a kitchen was continued, and the fire place insecure, and that the fire from the fire place and chimney of said room consumed the house. The plea refers to the survey as containing the representations relied on. It makes no averment with regard to an increased hazard or risk, arising from the fact alledged to have been misrepresented or concealed. Nor does it alledge that the burning of the house was caused by that fact. But waiving any remarks on these points, the plea, so far as it relies upon the use of one of the rooms of the dwelling house as a kitchen, is considered as being defective, on the ground already sufficiently discussed, that it does not show that the alledged misrepresentation and concealment were material to the acceptance of the risk or the rate of insurance. And, that so far as it relies on a misrepresentation or concealment of the true condition of the fire place in said room, it is insuf-

*A plea to an action on a policy of insurance against fire, relying upon a fraudulent representation, should aver that the misrepresentation or concealment were material to the acceptance of the risk or rate of insurance, and to point out in what the insecurity consisted, and how the risk was greater.*

ficient, because it does not show in what the insecurity consisted, or point out the particular defect in the fireplace, nor even alledge that there was any substantial defect or insecurity. It is not admitted that after a loss has occured and at the end of a six years' insurance the policy can be avoided by a vague conjectural statement of this kind.

A substantial defect in the fire place, which might endanger the safety of the building, would no doubt be a material fact, the fraudulent misrepresentation or concealment of which might suffice to vacate the contract. But the plea does not show, nor even alledge such a defect. It should have stated the particular defect, so as to apprize the plaintiff of the facts relied on to avoid the policy. The word fraudulent, applied to the representation or concealment, does not magnify nor even identify the fact misrepresented or concealed, and cannot supply the omission to show its materiality.

6. The 7th plea, the consideration of which has been postponed, because it introduces matter entirely new, was filed on the 27th day of September, 1847, and alledges that on the 24th day of September, 1827, one Gilbert C. Russell was seized in fee of the land and the dwelling house insured, &c., and conveyed them to James Southard, who on the same day executed and delivered to him (a writing,) showing that said conveyance was only a mortgage or security for money loaned by Southard to Russell, of which the plaintiff had notice at the time; that the plaintiff claimed the said house and land by devise from James Southard, with full knowledge that his title was only a mortgage, which Russell had a right to redeem, &c.; that the title was only a mortgage at the date of the policy, and that the true title of the plaintiff, and the incumbrances was not disclosed at the time, nor expressed in the policy.

This plea is founded upon the 13th section of the charter of incorporation, which in effect declares the policy void, unless the true state of the title of the assured, and the incumbrances thereon are expressed in the policy. This section came before the Court, and received a construction in the case of this Company

The insured should state truly his title to the property insured; a plea impeaching the policy for such a failure, should show such facts as will enable the

INSURANCE COM-
PANY
vs
SOUTHARD.
_____
Court to say that
the title has not
been fairly dis-
closed, if they
be true.

against Addison & Clendennin, (7 *B. Monroe*, 470.) And we are of opinion that if the plea, as it professes to do, shows that the true state of the title at the time of the insurance, and as known to the plaintiff, was not disclosed and inserted in the policy, it presents a valid bar to the action, if upon the fact as it existed, the interest of the plaintiff in the premises was less valuable than from the statement in the policy it appears to be. But whether the omission to state the fact in the policy were the fault of the insurers or of the insured, we are of opinion that the plea which seeks on that account to avoid the contract, and in effect to force a forfeiture or penalty, should be explicit in the statement of all facts necessary to make out the charge, and that it should especially show that the omitted fact was such as really and materially affected the value of the plaintiff's interest in the premises insured. The time at which this matter was for the first time introduced, as well as its own nature and intended effect, requires that it should be scrutinized with some strictness.

The material question is, whether the plea shows with sufficient distinctness and certainty, that the title which had been conveyed to James Southard in 1827, was subject to redemption at the date of the policy, or in other words, that there was then a subsisting and available right of redemption which affected the value of the legal title in the hands of the plaintiff. The only averment upon this point, is that the title of the plaintiff at the date of the policy, was a mortgage title, omitting the words previously used, "that Russell had the right to redeem." And although about fourteen years had elapsed from the date of the deed to J. Southard to the date of the policy, and twenty years had fully elapsed from the former date to the filing of the plea, it is not alledged that Russell had even up to the last date, claimed or asserted the right of redemption by act, or even by word. Nor is it alledged that the writing which evidenced the nature and objects of the deed, was still in the hands of Russell as an enforcible instrument. But farther than this, the plea does not state the contents or substance of the writing said to have been delivered

to Russell. It does not state such facts as would ena-
ble the Court to determine whether there was or not at
the date of the policy an outstanding right of redemp-
tion, or whether the plaintiff's title was that of mort-
gagee, but merely states the conclusion of the defend-
ants that it was a mortgage title. The defendants
might conceive that the instrument alledged to have
been delivered to Russell, converted his absolute deed
into a mortgage, when if exhibited, it would be entitled
to no such effect. If they knew its contents they should
have stated them, so that the Court might judge. And
if they did not know them they should not be allowed
to avoid their contract by the vague suggestion that the
plaintiff had only a mortgage title at the date of the
policy. We think this plea was properly adjudged in-
sufficient.

7. Upon the trial of the issue on the fourth plea, two
questions only were decided by the Court against the
defendants: 1st. The Court on objections made by the
plaintiff, refused to permit the surveyor of the defend-
ants, by whom the survey already referred to was made,
to answer the question as to what representations were
made to him by the plaintiff on that occasion. Assum-
ing the object of the question to have been to prove
the plaintiff's representation as to the state of the build-
ing or of its occupancy at that time, we are of opinion
that the evidence had no relevancy to the issue, and
was properly rejected. It was not suggested and can-
not be supposed, that any intimation was then given of
a fraudulent design to burn the building after it should
be insured. And even a fraudulent representation of
its condition would furnish no reasonable ground for in-
ferring such a design. The loss occurred about six
years after the survey.

*The verbal rep-
resentations of
the insured to
the surveyor,
at the time of
making the sur-
vey, not proper
to be detailed to
the jury, in an
action of cove-
nant on the pol-
icy, under the is-
sue in the case.*

The Court having, before the argument of the
case, instructed the jury, on the motion of the defend-
ants, that the measure of damages was two thirds of
the actual value of the house at the time it was burned,
with ,interest, &c., refused after the argument was
through, to give an instruction moved for by the same
party, which after stating the criterion of damages as

above, went on to say, "and not the price that it would cost to re-construct it, (the house,) according to the *extra* or fanciful carpenter's work that was on it, unless so far as that work did or would add to the value as a matter of taste or use." We do not perceive that the proposed addition was required by reason of any uncertainty or want of precision in the first instruction, or that it would have presented to the jury with greater distinctness or accuracy, the true criterion of damages. It would not have been necessary to inform the jury that the cost of extra or fanciful wood work which, in their opinion, added nothing to the value of the house either as a matter of taste or use, did not constitute a criterion or even an element of its actual value. And it is not to be inferred from their verdict, that they labored under any mistake on the subject, or that they found any part of the damages for work which was without value, either as matter of taste or for use. There was no error, therefore, in refusing this instruction, and none in overruling the motion for a new trial.

Wherefore, the judgment is affirmed.

*Guthrie and Pirtle* for plaintiffs; *Loughborough* for defendant.

---

MANDAMUS.

Case 158.

September 30.

Case stated.