The Commonwealth's Insurance Co., &c. v. Monninger.

THE COMMONWEALTH'S INSURANCE CO., &C. v. MONNINGER.

The written application for insurance, which usually precedes the ex-- ecution of a policy, does not constitute a part of the contract of insurance, in such sense as to require it to be filed as part of the foundation of the suit.

The mere indication, in the policy, of the place where the application could be found on file, does not make it a part of the policy.

A paper, not attached to the policy, may, by express stipulation in the policy, be made a part of it, and amount to a warranty.

By the law of insurance, to make a stipulation an express warranty, so that on the literal fulfillment thereof the entire contract shall depend, it should be inserted in writing on the face of the policy, or in a detached paper stipulated to be a part of the policy.

A mere representation, as distinguished from a warranty, in the law of insurance, is a verbal or written statement made by the assured to the underwriter, before the subscription of the policy, as to the existence of some fact or state of facts, tending to induce the underwriter more readily to assume the risk, by diminishing the estimate he would otherwise form of it.

A want of truthfulness in the representations is fatal or not to the insurance, as it happens to be material or immaterial to the risk undertaken.

It is competent to prove, by the testimony of a witness, that he forwarded a notice of the loss by fire to the company, and to read to the jury a copy of that notice, retained at the time, without having first notified the company to produce the notice.

Section 22, 1 R. S. p. 330, has reference alone to domestic corporations, or companies.

APPEAL from the *Vigo* Circuit Court.

HANNA, J.—Suit by appellee, upon a policy of insurance against fire, issued by the appellant, on personal property.

The policy and the conditions, and the proposals thereto annexed, are made a part of said complaint.

The written application of the appellee, made to said ap-

The Commonwealth's Insurance Co., &c. *v.* Monninger.

pellant preliminary to said contract, is not made a part of the complaint, nor filed with it.

Said application is set up in the answer of defendant, and the representations therein contained, as to certain questions of fact, are relied upon as affirmative warranties, namely, as to the value of the property, and the location and situation of the building, in reference to other structures, which contained the said property.

Whether such statements should be regarded as affirmative warranties, or as mere naked representations, becomes important, in view of the finding of the jury on special interrogatories propounded.

By the policy, the appellant insured the appellee for 85 dollars and 50 cents, for the term of, &c., "against loss or damage by fire, agreeably to the tenor of their printed proposals and conditions hereunto annexed, to the amount of 3800 dollars, on," &c., describing the property, "now used by insured in his two story framed tavern stand, situated on lot No. 85," &c. "For a more particular description of which, see application and survey No. 37, on file at the *Terre Haute* agency office," &c., &c., "and that this policy is made and accepted in reference to the provisions, class of hazards, and conditions hereto annexed, which are hereby declared to be a part of this policy, and a warranty on the part of the assured, and are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for."

Said "conditions of insurance" contained, among other provisions, the following:

"Persons desirous of making insurance are to furnish the secretary or agent of the company with the following information:

"1. Of what materials the walls and roof of each building

are constructed, as well as the construction of the buildings contiguous thereto.

"2. Whether the same are occupied as private dwellings, or how otherwise.

"3. Where situated, and how many stories high.

"4. In the insurance of goods, wares, or merchandise, or the place in which the same are stored, or deposited, it is to be described; also, whether such goods are of the kind denominated hazardous, or whether any manufacturing is carried on in the premises; and if any person shall insure his or their building or goods, and shall cause the same to be described in the policy otherwise than as they really are, such insurance shall be void and of no effect," &c.

"10. Persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the company," &c., &c. They are also to furnish a schedule under oath, which schedule and oath shall contain statements and facts on designated points.

14. Provides for continuing an insurance once made, "and all insurances, original or renewed, shall be considered as made under the original representations, in so far as it may not be varied by new representations," &c.

Thus far as to matter contained in exhibits accompanying the complaint. In that it was averred, that, &c., within the time covered by said policy, said property was destroyed by fire, of which the defendant had notice, but had not paid, &c.

The defendant answered in two paragraphs. The execution of the contract sued on, and the burning of the property, were admitted in a part of said answer preceding the paragraphing thereof; but it was averred:

1. That the plaintiff burned his said property, or caused it to be done.

2. That by certain false or fraudulent representations, namely, that said property was of greater value than it really

The Commonwealth's Insurance Co., &c. *v.* Monninger.

was—that the profits of said tavern were greater than they were—that he was intending to be absent for a length of time, and therefore desired to insure—that he kept a watch day and night on said premises—that he carefully examined the same every night before going to bed—that there were no buildings within 38 feet of said tavern; the plaintiff induced the defendant to enter into said contract; that he thus intended to defraud defendant, and for that purpose effected other insurances with other companies, with said agents, at high and fictitious values on all his property, &c.; and that, in futherance of said fraudulent scheme, he is setting up claims against said other companies.

3 and 5. Set up the written application upon which the contract of insurance was, as defendant alleges, made; and avers, that thereby, and as therein appears, the plaintiff "undertook, and promised the defendant, that there was no building within less than 38 feet of said tavern, and that said property was worth 5500 dollars, when, in fact, there was a building within 25 feet, and said property was worth but 600 dollars; which facts were material to the risk, and induced the company to take it."

4, 6, 7 and 8. Set up and rely upon a written application, made in effecting an insurance of the said tavern house in another company.

Demurrers were sustained to these last four paragraphs; whether correctly or not is not material, as the same evidence that could have been admitted under the same, appears to have been received under the other issues.

9. Similar to the second, but more in detail, as to false representations; and it also avers, that after the fire, the plaintiff failed and refused to comply with certain of the conditions annexed to said insurance.

10. States that the property was not all destroyed, but 500 dollars worth was saved, &c.

In reply the plaintiff denied generally. There were special denials as to each affirmative fact averred in the answer. As to the averments of the location of other buildings with reference to said tavern, he replied, that "there was no building within 38 feet of the same, material to the risk, or which increased the danger of loss and damage by fire, and unknown to the defendant at the time of issuing said policy."

Trial; verdict, and answers to special interrogatories, as follows:

"We, the jury, find for the plaintiff the sum of 1800 dollars; and we further find that there should be added to the above amount of 1800 dollars, ten per cent. damages for every thirty days after the first day of *September*, 1857, if, according to law, the plaintiff ought to recover the same."

1. "Is the application in evidence, and set out in the defendant's answer, the identical application referred to in the policy sued on, and does it constitute a part of the contract? Answer: Yes.

2. "What was the distance from the building, mentioned in the policy, to the row of one story framed buildings on the south? Answer: Less than named in the policy; about 28 feet.

3. "What was the distance from the building of the plaintiff, mentioned in the policy, to the plaintiff's stable at the nearest point of the two buildings? Answer: About 25 feet.

4. "Where did the fire originate, which destroyed the plaintiff's house, containing the supposed property sued for? Answer: The fire originated in the barn or stable.

5. "Did the plaintiff knowingly over-estimate the value of the property insured, in his application for the policy sued on? Answer: He did.

6. "What was the cash value of the property insured, in the policy sued on, in the building mentioned in said policy, on the evening before the fire? Answer: 1800 dollars."

7. Same question and answer at the time of insurance.

8. "Did the plaintiff knowingly make untrue representations and statements to the defendant's agents, with reference to the risk covered by the policy sued on, at the time he obtained said policy, which induced the said defendant to give him said policy? Answer: No.

9. "Did the plaintiff, in the answers, or any of them in the application referred to in the policy, and made by him to said defendant, when he obtained said policy sued on, give any untrue answers as to the value of the goods, or the distance from other buildings, whereby the said company was deceived as to the character of the risk? Answer: He made no untrue answers, by which the defendant was deceived."

Upon the return of the verdict, the defendant moved to dismiss the case, assuming that said application for insurance was a part of the contract, and should have been declared upon as such. The motion was overruled.

Passing over the question, whether the motion made would have reached such a defect, if it had existed, we are of opinion, that the written application did not form a part of the contract, in that sense which would require it to be filed as the foundation of the suit.

It is true, the jury found it was a part of the contract. Perhaps they would have discharged their duty when they had passed upon its identity, and the time, or other facts connected with its execution, leaving its legal effect to be determined by the Court. *Pawson* v. *Barnevelt*, Doug. R. 12 n.; Baum on Ins. 54; Ang. on Fire and Life Insurance, p. 50, sec. 14.

The defendant moved for a new trial, in arrest of judgment, and for a judgment on the special findings, notwithstanding the general verdict for the plaintiff.

The motions were severally overruled, and a judgment rendered for the said sum of 1800 dollars, over a motion by the

plaintiff, founded upon the special part of said verdict in reference to the per cent. named.

What we have already said in'regard to the motion to dismiss, disposes of the question attempted to be raised on the motion in arrest.

As for the motion based on the special findings, perhaps its correct determination depends upon the construction which should be given to the application of the plaintiff, pleaded by the defendant. We have already intimated our opinion thereon.

In the first part of the application, the property is described, the estimated valued stated, and the time during which insurance was sought, and the location of the house in which situated, given as heretofore stated; it then provides:

"Applicants must answer all interrogatories fully, or the proposal may be rejected. Three-fourths only of the value of the property will be insured. The said applicant makes the following statements, and gives the following answers to interrogatories here put, relative to the risk, as a warranty on the part of the assured."

Here follow statements in the form of answers to minute questions relative to said property, and the house where it was kept; among them those in regard to the distance from it to other houses. After which is the clause:

"And the undersigned, applicant for the proposed insurance, hereby covenants and agrees to accept of the policy issued upon this application and survey, if in accordance therewith. But if any untrue answer has been given to the foregoing interrogatories, whereby the said company has been deceived, as to the character of the risk, &c., &c., then said policy of insurance is to be void and of no effect."

If the statements in the application are to be regarded as express, or affirmative warranties, upon the truth of which

the validity of the contract hangs, then the motion by defendant for a judgment should have prevailed.

Some parts of said conditions and applications appear to plainly indicate that the defendant intended to treat, and rely upon such statements as of that character. Other parts refer to the same as representations; and yet others leave it doubtful, depending upon the effect they produced in inducing the defendant to take the risk.

We do not think the mere indication, in the policy, of the place where the application could be found on file, can be regarded as so referring to it as to make it a part of the policy. In this view we are strengthened by the language used, which appears to disclose the purpose for which the reference is made, namely, "for a more particular description;" and if it does not exclude the conclusion, it at least does not warrant us in concluding that the reference was intended for the purpose of incorporating said application as a part of the policy; so that in any Court its statements could be regarded as warranties. We are aware, that a paper, attached to a policy, may, by express terms, &c., be made a part of it, and amount to a warranty. But it should be referred to expressly as forming a part of it. *Snyder* v. *Farmers' Ins., &c.,* 16 Wend. 92; *Burritt* v. *Saratoga, &c.,* 5 Hill 188; *Jefferson Ins. Co.* v. *Cothral,* 7 Wend. 72; *Andrews* v. *Essex, &c.* 3 Mason 6; *Jennings* v. *Chenango, &c.,* 2 Denio. 75; *French* v. *Chenango, &c.,* 7 Hill 122.

In the last cited case, the property was mentioned in the policy, "reference being had to the application for a more particular description, and the conditions annexed, *as forming a part of this policy;*" and yet the Court was of opinion the conditions only were thereby made a part of the contract, and that the application was referred to merely for the purpose of identifying the property, and not for the purpose of making its statements a part of the contract. It is not neces-

sary for us to say whether we would go to the extent of this decision, because there is no express stipulation in the policy, in the case at bar, whereby the application was made a part thereof. Then as, by the law of insurance, to make a stipulation an express warranty, so that on the literal fulfillment thereof the entire contract depends, it should, in point of fact, be inserted, in writing, on the face of the policy, or in a detached paper, so as aforesaid expressly made a part of the policy; this paper can not be regarded in that light. 1 Arn. on Mar. Ins. 577; 1 Marsh on Ins. 354; Ang. on F. & L. Ins. 169. If the statements so made by he plaintiff, and found by the jury to have been falsely made, should have been regarded as a warranty, then such special findings would have shown an express breach of the contract, because a warranty, in insurance, is a part of the contract, and the thing must be actually such as it is represented to be. *McMorran* v. *Newcastle, &c.,* 3 Dow. R. 255; *Duncan* v. *Sun, &c.,* 6 Wend. 488; *Delongamon* v. *Tradesmans', &c.,* 2 Hall. (N. Y.) 589; *Oniel* v. *Buffalo, &c.,* 3 Comst. 122; *Kentucky, &c.* v. *Southard,* 8 B. Mon. 634; *Lindman* v. *Desborough,* 8 B. & Cress. 586.

Viewing the conditions and application with reference to the law of insurance, we are of opinion, the statements made should be regarded as representations; the technical sense of which, in that respect, as distinguished from warranty, is well defined to be, "a verbal or written statement, made by the assured to the underwriter, before the subscription of the policy, as to the existence of some fact, or state of facts, tending to induce the underwriter more readily to assume the risk, by diminishing the estimate he would otherwise form of it." Arn. on Ins. 489. It is a part of the preliminary proceedings which propose the contract; and a warranty is a part of the contract, as it has been completed. Ang. on F. & L. Ins. 178. A want of truth in the representation, is fatal or not to the

The Commonwealth's Insurance Co., &c. *v.* Monninger.

insurance, as it happens to be material or immaterial to the risk undertaken. *Id.*

As, under our rules, the evidence in the case at bar is not in the record, we are confined to the verdict and findings of the jury, and the pleadings in the case, to determine the motion now being considered, even if we could in any instance look into the evidence upon such a motion.

Regarding the statements in the application in the light of representations, the pleadings on the special interrogatories are not inconsistent with the general verdict, and the motion was therefore properly overruled.

If the facts, as disclosed in the evidence, showed, as indicated by the findings of the jury, that the untrue statements, made by the plaintiff, did not induce the defendant to take the risk, and the defendant was not deceived as to the same, then they were not material in determining the question, whether said risk should be taken by the defendant, or the estimate of defendant in reference thereto.

During the progress of the trial, the plaintiff was permitted to prove, by his testimony, that he had transmitted by mail to the secretary of the defendant, a notice of the disaster, and to read to the jury a copy of that notice, retained at the time, without having notified the defendant to produce said notice on the trial.

In this ruling there was no error. 2 Phil. Ev. 544.

We have thus disposed of the errors assigned by the appellant; and will notice the cross errors assigned by the appellee, and upon which he asks us to render such judgment as he avers the Circuit Court should have rendered; or to reverse the judgment back to the ruling, in which he alleges there was an error thus committed.

Accompanying the general verdict was a finding in the nature of a special verdict. Upon this, and a statute we have, the appellee based his motion for an increase of the

amount of the judgment over the said sum of 1800 dollars, found in said general verdict.

We are referred to section 22, p. 334, 1 vol. R. S., as authorizing the motion. That statute has reference to domestic corporations, or companies. *Igoe* v. *The State*, 14 Ind. 240.

*Per Curiam.*—The judgment is affirmed, with 8 per cent. damages and costs.

*John P. Usher, W. E. McLean* and *A. B. Crane,* for the appellant.

*J. P. Baird, B. M. Moffatt* and *R. W. Thompson,* for the appellee.