Nov. Term,
1857.

Roots and Another *v.* Tyner and Another.*

| | | |
|---|---|---|
| Roots | 10 | 87 |
| v. | ,127 | 56 |
| Tyner. | 10 | 87 |
| | 108 | 161 |

An instruction inaccurately worded, and erroneous as an abstract proposition, is nevertheless right, if it is correct in its application to the evidence, and not calculated to mislead the jury.

An appellant cannot assign as error an instruction in his favor.

An instruction prayed should be based upon facts assumed to be proved by $all$ the evidence bearing upon them, and not by a portion only of the evidence·

The Court must decide the effect and sufficiency of evidence where the evidence offered can legally produce but one result; but the Court will not assume that but one effect will be produced by the evidence upon a given point, unless such evidence has a fixed legal import, and is such that no other inference can be drawn from it.

An instruction too narrow to cover the merits of the case, should be refused.

The Court is not bound to give an instruction unless it ought to be given precisely as prayed.

APPEAL from the *Franklin* Circuit Court.

Gookins, J.— *Tyner* and *Roberts*, the plaintiffs, were millers, residing at *Brookville*, *Franklin* county, *Indiana*, and *Roots* and *Coe*, the defendants, were commission merchants, residing at *Cincinnati*, *Ohio*. In *May* and *June*, 1851, the plaintiffs consigned to the defendants 38 barrels of flour, and in the fall of 1854, they forwarded to them 145 barrels, for sale. This action was brought to recover the value of the two consignments, alleging a special demand and refusal to account.

The defenses were, that the first lot was not received by the defendants; and, as to all, that they had fully accounted and paid over the proceeds.

There was a jury trial—verdict for the value of both consignments—new trial refused, and judgment.

The controversy grew out of the manner of keeping the accounts by *Roots* and *Coe*, and the insolvency of *Tyner*, one of the plaintiffs.

Previous to *February*, 1850, several different firms, of each of which *Tyner* was a member, and seems to have been the managing partner, had dealings with the defend-

*Tuesday,*
*November 25,*
*1856.*

---

* The opinion in this case has been held back on petition for a rehearing since the date in the margin. The petition was overruled *May* 8, 1858, and the judgment rëaffirmed.

ants, and with a previous firm of which they were successors. The defendants kept separate accounts with each of the firms. In *February*, 1850, the manner of keeping the accounts was changed at the request of *Tyner*, and from that date they were kept in his name. All receipts from either of the firms were credited to *Tyner*, and all disbursements to or on account of either, or of *Tyner* individually, were charged to him. There was evidence tending to show that this was done with the consent and approbation of *Roberts.* *Roots* and *Coe*, in their record of sales, kept an account of their transactions with each of the several firms. The evidence tended to show that *Roberts* directed a specific appropriation of the proceeds of sales of the 145 barrels forwarded in *November*, 1854, which order was afterwards countermanded by *Tyner*, at the request of *Roots* and *Coe*, and without the knowledge of *Roberts;* and the proceeds of the sales of the flour were carried to the credit of *Tyner*, who soon after failed, there being a large balance due to the defendants from *Tyner*, on his general account with them. He was also largely indebted, at the time of his failure to his copartner, *Roberts*, at whose instance this suit is evidently prosecuted in the name of the firm.

It is not contended by the appellants in this Court, but that there was sufficient evidence to sustain the verdict, if the jury were rightly instructed. The errors assigned are upon instructions given and refused. The following were given by the Court of its own motion:

1. If you believe from the evidence, that the 13 and 25 barrels of flour were delivered by the plaintiffs to the defendants, at their commission house in the city of *Cincinnati*, you will find for the plaintiffs the amount the flour is worth from the evidence, unless you believe it was passed to the credit of *Tyner* and *Roberts*. If you believe the flour was not delivered to the defendants, you will find for the defendants.

2. If you believe, from the evidence, that the firm of *Tyner* and *Roberts* were doing business with *Roots* and *Coe*, as commission merchants, and that *Tyner* had all the business of the firm of *Tyner* and *Roberts* done with *Roots*

and *Coe* in the name of *Tyner* alone, by the knowledge and consent of *Roberts*, and that it was acknowledged by *Roberts* that *R. Tyner* was the financial agent of the firm of *Tyner* and *Roberts*, and that all the moneys due the firm were credited and paid to *Tyner*, and that all the debts due from the firm of *Tyner* and *Roberts* to *Roots* and *Coe*, were charged to the individual account of *Tyner*, and paid by him, and that *Tyner* was in the practice of using his individual name for the purpose of procuring money for the use of the firm of *Tyner* and *Roberts* from *Roots* and *Coe*, or from others, to the knowledge of *Roots* and *Coe*, and they furnished *Tyner* advancements in money or bills of acceptance, and *Tyner* ordered the 145 barrels of flour to be passed to his individual account, it would authorize *Roots* and *Coe* to pass to the credit of *Tyner* the value of the flour, and you should find for the defendants.

The first of these instructions is not as accurately worded as would have been proper; but taken in connection with the evidence, we do not think it could have misled the jury. It is complained that by the use of the word "*is*" the jury were directed to take the value of the flour at the time of trial as the measure of damages; but that word was used in immediate connection with a reference to the evidence of value; and no evidence was given of its value at the time of trial, but its value when delivered was proved. It is also complained that the jury were improperly directed to find for the plaintiffs the value of this flour, unless it was carried to the credit of *Tyner* and *Roberts*. We think the meaning of the Court was, that the jury should find, as to that flour, for the plaintiffs, unless they had received the benefit of it. The contest in respect to these two lots of flour, constituting the first consignment, was, whether the defendants had received it. To that point the testimony was addressed, and a witness brought to prove the delivery was sought to be impeached. The account rendered by the defendants contained no credit for it. With this evidence before them, we think the jury would put the construction that we have put upon the charge. It is further complained, that the jury was directed to find for the

plaintiffs, unless *Tyner* and *Roberts* had been credited with the proceeds of the flour, although there may have been a general balance against them. In respect to this, we repeat what we have already said. The Court and jury were not dealing in abstractions. They had the evidence before them, and in view of it, any jury, we think, would have been led to consider that which applied to the controversy involved in this part of the case—did the defendants get the flour? If they did, have they accounted for it? An instruction is right if correct in its application to the evidence, although it might be erroneous as an abstract proposition. *Shook* v. *The State*, 6 Ind. R. 113 (1).

Upon the second instruction, the appellants cannot assign error. It is in their favor. They complain that it imposed too many restrictions on their right to a verdict. The jury were told that if certain facts were proved they must find for the defendants; not, that if certain facts were not proved they must find for the plaintiffs. The point sought to be made upon this instruction could only have been raised by the defendants by praying an instruction which did not impose so many restrictions upon their right to a verdict, and excepting to the refusal to give it.

The following instructions were prayed by the defendants, and refused by the Court:

"1. That if the jury believe, from the testimony, that the facts with respect to the disposition made by defendants, of the proceeds of the 145 barrels of flour, by the plaintiffs consigned to the defendants for sale, in *October* and *November* last, are as testified to by Mr. *R. Tyner* and the clerk of the defendants, in his deposition, the defendants were justified in making the disposition which they did make of such proceeds, and are not liable again to account to the plaintiffs therefor.

"2. If *Roots* and *Coe* did receive the 38 barrels of flour in controversy, they ought, if such was the usual course of dealings between the parties, to have credited the *R. Tyner* account with the proceeds; and if the only result of giving that credit would be to reduce the balance which stood to the debit of that account, on the first of *Octo-*

*ber,* 1854, the plaintiffs cannot recover in this suit there-
for."

The first of these is objectionable, because its effect, if
given, would have been to draw the attention of the jury
from the other evidence in the cause, and to induce them
to base their verdict on that of two only out of a number
of witnesses. This was improper. *Lawrenceburg, &c.,
Railroad Co.* v. *Montgomery,* 7 Ind. R. 474. An instruction
prayed should be based upon a state of facts assumed to
have been proved by all the evidence bearing upon it, and
not by a portion only of the evidence.

The second instruction prayed by the defendants, was
rightly refused. There are some cases in which it devolves
upon the Court to decide upon the effect and sufficiency of
evidence ( *Crookshank* v. *Kellogg,* 8 Blackf. 256.—*Haynes*
v. *Thomas,* 7 Ind. R. 38); but this is where the evidence
offered can legally produce but one result. The Court can-
not be asked to assume that but one effect will be produced
by the evidence upon a given point, unless such evidence
has a fixed legal import, and is such that no other inference
can be drawn from it. As already stated, the contest con-
cerning the 38 barrels was, whether it had been delivered
to the defendants, their account with *Tyner* containing no
credit for it. That account, though kept with *Tyner,* and
with the assent of *Roberts,* was often shown to the latter,
as testified by the defendants' clerk. The account, as given
in evidence, showed monthly balances from *February,* 1850,
to *November,* 1854, and was proved to have been frequently
rendered to *Tyner,* of which rendering, it is fair to presume,
the several firms of which *Tyner* was the managing part-
ner had the benefit. From the manner in which the busi-
ness was transacted, the jury might have inferred that the
keeping of the accounts on both sides was intrusted mainly
to the defendants, and that if the account shown to *Rob-
erts* had contained a credit for the proceeds of this flour, it
would not have remained three and a half years without
being settled in such a manner that *Roberts* would have
got the benefit of it.

The instruction was properly refused, we think, for an-

other reason.   The object of it was to secure a verdict for the defendants in respect to the 38 barrels of flour, by the solution of an arithmetical proposition which did not necessarily involve the merits of the case.   Suppose the jury had found that the usual course of dealings between the parties would have been to credit the "*R. Tyner* account" with the proceeds of the flour, and had then imagined, contrary to the proof, that that had been done, and that this amount had been carried down through the various balances, and had been in that way finally subtracted from the balance on that account in favor of the defendants,— that would not have been conclusive of any question of right between the parties, regardless of the other evidence in the cause.   It is a favorite resort of the practitioner to endeavor to secure a verdict by fixing the attention of the jury upon a single proposition.   We do not mean to condemn that practice; but he that will do so must see that his proposition is broad enough to cover the merits of the case.   The jury might have been misled by the instruction, and the Court is not bound to give an instruction unless it ought to be given precisely in the terms prayed.

Upon the whole case, we conclude that the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*P. L. Spooner* and *J. Ryman*, for the appellants.

*J. D. Howland* and *G. Holland*, for the appellees (2).

(1) See, also, *Thompson* v. *Thompson*, 9 Ind. R. 323; *Shaw* v. *Saum*, *id*. 517; *Jolly* v. *The Terre Haute Drawbridge Co.*, *id*. on p. 423, and cases cited.

(2) Counsel for the appellees, in a supplemental brief, cited *McCall* v. *Seevers*, 5 Ind. R. 187; *Short* v. *Scott*, 6 *id*. 430; *Vanuxen* v. *Rose*, 7 *id*. 222, to the point that the verdict being right on the weight of evidence, the law of the case as given by the Court to the jury is wholly immaterial.