ADAM GERHAUSER, Respondent, *v.* NORTH BRITISH AND MERCANTILE INSURANCE COMPANY, Appellant.

Insufficiency of Evidence to be Specified—Presumptions in favor of Respondent's Testimony. Upon an appeal on the ground that the judgment is not justified by the evidence, the Supreme Court will confine itself to the particulars specified in the statement; and in case of material conflict, it will assume the facts as testified to on the part of respondent.

Insurance—Misstatement of Fact Known to Insurer. Where the owner of a brick house, which he had kept insured, found it necessary on account of the settling of one of the walls to replace it temporarily with wood, which the insurance agent knew; and upon taking out a new policy the owner stated to the agent that the building was in good repair, but in the same conversation mentioned the fact of the wooden portion still remaining: *Held*, no such misrepresentation as would vitiate the policy.

Depreciation of Property Insured. Where furniture was insured at its full value with the knowledge of the insurer, and was kept insured for the same amount for a number of years, while by ordinary wear and tear and the condition of the building where it was, and which was known to the insurer, it depreciated in value: *Held*, that the mere fact that such furniture was worth

Gerhauser *v.* North British and Mercantile Insurance Company.

less than the amount for which it was insured the last time did not vitiate the policy.

DESCRIPTION OF BUILDING IN POLICY NOT A WARRANTY. Where a policy of insurance described the building insured as a "brick building," and it appeared that on account of the settling of one of the walls it was found necessary to put ¬in temporarily a wooden substitution, which the insurer knew: *Held*, that the description in the policy was not a warranty that the building was entirely of brick.

CONSTRUCTION OF POLICY—DOUBTS IN FAVOR OF ASSURED. If on the face of a policy of insurance there is, in the language used or its effect, any room for construction or doubt, the benefit of the doubt must be given to the assured.

INTERPRETATION OF LANGUAGE OF POLICIES. In the construction of policies of insurance, such meaning should be given to the language used as plain men usually attach to it.

MISDESCRIPTION USED BY INSURANCE AGENT. Where on account of the settling of one of the walls of a brick building, it was found necessary to replace a portion of it temporarily with wood; and while in that condition it was insured, with full knowledge of its condition, as a "brick building": *Held*, that notwithstanding the wooden portion the building was not incorrectly called a brick 'building; but whether it was or not, the insurer could not take advantage of a misdescription knowingly used by its own agent, who drew the policy.

WHAT FALSE STATEMENT WORKS FORFEITURE OF POLICY. In order to work a forfeiture under a clause in a policy of insurance, which declares a forfeiture in case of fraud in the claim made for a loss or false declaring or affirming in support thereof, the false statement must be wilfully made with respect to a material matter, and with the purpose of deceiving the insurer.

OVERESTIMATE OF LOSS NOT CONCLUSIVE PROOF OF FRAUD. There is no rule in insurance cases that a verdict for plaintiff, finding the value of the property lost at only one-half or one-third the valuation given in the statement of loss, will be set aside as of itself evidencing fraud in such statement.

ADMISSION OF IMPROPER TESTIMONY MUST BE AFFIRMATIVELY SHOWN. Where it was objected on appeal that a witness had been-allowed to answer an improper question, but the record failed to show what the answer was: *Held*, that the presumption was that the answer was harmless.

TESTIMONY ON FORMER TRIAL OF ABSENT WITNESS NOT ADMISSIBLE. The rule that the testimony of a deceased witness given on a former trial of the same cause may be proved by secondary evidence and so be admitted, does not apply to the case of an absent witness.

INSURANCE—WHAT FACTS MUST BE DISCLOSED. Where the jury in an insurance case was instructed that the mere failure of the insured to disclose material facts known to the insurer or unknown to the insured would not prevent a recovery, and such instruction was pertinent to the testimony: *Held*, no error.

INSTRUCTION REMOVING QUESTION OF FACT FROM JURY PROPERLY REFUSED. Where the court in an insurance case refused to instruct the jury that if plaintiff failed to deliver to defendant an account of the destruction of the

property insured as required by the policy, they should find for defendant: *Held*, properly refused ; for the reason that it took from the jury the question whether defendant had not, as plaintiff claimed, waived such statement.

MISREPRESENTATION BY INSURED—QUESTION OF FACT. The question whether the representations made by an insured person are materially untrue, or untrue in some particular material to the risk, is a question of fact for the jury.

CONSIDERATIONS PERTINENT TO QUESTION OF MISREPRESENTATION. Where in an insurance case the effect of an instruction, asked by defendant in reference to alleged false representations by the insured, would have been to prevent the jury from drawing a conclusion from the whole conversation whether or not the insurer was sufficiently informed as to the true condition of the property : *Held*, properly refused.

INSTRUCTIONS—STRIKING OUT REITERATIONS. It is no error to modify an instruction by striking out a portion of it, if such portion be merely a repetition of what is given in another part of the charge ; it being sufficient if the whole series of instructions when read in connection correctly express the law as requested.

SUBMITTING REJECTED PORTIONS OF INSTRUCTION ONLY PARTLY OBLITERATED. Where an instruction was modified by rejecting a portion, and such rejection was indicated by passing through the rejected words the stroke of a pen, leaving them still legible ; in which state the instruction was handed to the jury : *Held*, that unless the attention of the court had been called to the fact, and it had refused to allow the instruction to be re-written, no complaint of the jury having been misled thereby could be entertained.

JURY TO DETERMINE WHAT CHANGE IN BUILDING IS MATERIAL TO FIRE RISK. Where in an insurance case the court refused to instruct that a certain substitution of wood for a portion of a brick wall was material, and left it to the jury to determine as a question of fact ; and there was nothing in the policy in the nature of a warranty as to what condition of the building or representation thereof should be deemed material : *Held*, no error.

AGREEMENT AS TO WHAT SHALL BE MATERIAL REPRESENTATION. Parties to a contract of insurance may decide for themselves what facts or representations shall be deemed material, either by converting the representations into a warranty or stipulating as to their materiality ; and when they have so agreed, the agreement precludes all inquiry upon the subject.

MATERIALITY OF REPRESENTATION NOT TO BE ASSUMED AGAINST INSURED. As a warranty will not be created or extended by construction or implication ; so the intention of the parties to an insurance contract to conclude by convention the question of the materiality of a representation should be clearly manifested ; and in case of doubt, the doubt is to be resolved in favor of the insured.

WRITTEN INSURANCE CONTRACT VITIATED BY PAROL—MATERIAL MISREPRESENTATION—BURDEN OF PROOF. Though as an ordinary rule, written contracts cannot be controlled by antecedent or cotemporaneous statement not embraced in the writing, in the case of a policy of insurance a recovery

Gerbauser *v.* North British and Mercantile Insurance Company.

may be prevented by proof of verbal misrepresentations which, though undesigned, were material to the risk; but the burden of proof is on defendant to show the misrepresentation, and that it was material.

DIFFERENCE BETWEEN CIVIL AND CRIMINAL PRACTICE AS TO REFUSING IN-STRUCTIONS. The rule in criminal cases, that when an instruction is refused for the reason that it has already been given, the court should so inform the jury, does not apply in civil cases.

APPEAL from the District Court of the First Judicial District, Storey County.

This cause, which was before the Supreme Court on a previous appeal, (reported 6 Nev. 15) was an action on two policies of insurance, one in the sum of $5,000 on a brick building in Virginia City, the other in the sum of $7,000 on the furniture and merchandise therein contained, all of which were consumed by fire November 14th, 1868. There was a verdict and judgment in favor of plaintiff in the sum of $9,500, with interest thereon from the date of the fire.

Plaintiff's instructions marked " D," " C " and " E," mentioned in the opinion of the court, were in reference to what constituted a " false declaring or affirming " within the meaning of the eleventh condition endorsed upon the policies.

Defendant's instruction " J," which was refused, was as follows :

" J. If plaintiff failed to deliver to defendant or its agents an account of his loss or damage on account of the destruction of the building insured by policy No. 665,769, as required by the eleventh condition endorsed on said policy, then as to that policy the jury must find for the defendant."

The question asked the plaintiff's witness Ritter, and defendant's objections to it, will be found below in appellant's sixth point.

*Williams & Bixler,* for Appellant.

I. Plaintiff told defendant's agent that the building was in good order and repair, and it was not so. He knew that he had been compelled to pay a high premium by reason of the condition of the rear wall, and that his policies had been kept up at a high rate with the understanding that the rate should be reduced whenever that

wall was repaired. He knew, therefore, the meaning of the terms "in good order and repair," and he knew that if he had disclosed the truth the high rate would have continued. His statement, therefore, amounted to a misrepresentation.

II. Plaintiff did not disclose the general dilapidated condition of the house, nor the condition and state of repair of the furniture. The contract of insurance is one in which underwriters. act on the representation of the assured, and that representation ought consequently to omit nothing which it is material for the underwriters to know. *Columbia Insurance Co.* v. *Lawrence*, 2 Peters, 248; *N. Y. Bowery Fire Insurance Co.* v. *N. Y. Fire Insurance Co.*, 17 Wend. 306; *Cumberland Valley Mutual Protection Co.* v. *Schell*, 29 Penn. State, 36; *Smith* v. *Insurance Co.*, 17 Penn. State, 261; 3 Wood and Min. 533; 1 Story C. C., 62; 1 Allen, 309; 6 Cushing, 48; 10 Cushing, 449.

III. The building is described in both policies as " a brick building"; this amounts to a warranty that the building was in fact a brick building. *Fowler* v. *Ætna Fire Insurance Co.*, 6 Cowen, 673; *Silem* v. *Thornton*, 77 Eng. Com. Law, 880; *Wall* v. *East River Mutual Insurance Co.*, 3 Selden, 373. The same rules apply to the furniture as to the building, because the condition of the building always controls the premium upon the property in it. *Gould* v. *N. Y. Mutual Fire Insurance Co.*, 47 Marine, 403.

IV. Plaintiff failed to make a statement of his losses as provided in the eleventh subdivision of the conditions endorsed on the policy, and therefore cannot recover. He stated, among other things, that his house was completely and expensively furnished, and that the cash valuation of the household furniture at the time of the fire was $6,000 in coin. In this there was both fraud and falsehood. The verdict of the jury found the value of the furniture at $3,000. These differences in value from the valuation in the statement are so great as to render it utterly impossible that the valuation in the statement could have been the result of a mere error of judgment, and they manifest fraud and false swearing. *Levy* v. *Ballie*, 7 Bingham, 349; *Hoffman* v. *Western Marine Fire Insurance Co.*, 1 Louisiana Annual, 206.

V. Plaintiff made no statement of loss sustained by destruction
of the building.   The statement made applied entirely to the house-
hold furniture and merchandise.   That statement might have been
a sufficient account of loss under one policy, but it does not follow
that a statement of loss under the other policy covering the building
should be considered waived.   A waiver of such a condition of the
policy is not lightly to be presumed, but should be based upon either
express acts or declarations of the insurer, or upon such facts or
circumstances as necessarily lead to the conclusion that a waiver
was intended.   *Macomber* v. *Cambridge Mutual Fire Insurance
Co.*, 8 Cush. 133 ; *Columbian Insurance Co.* v. *Lawrence*, 2 Pet.
(N. S.) 53 ; *Wellcome* v. *People's Equitable &c. Insurance Co.*,
2 Gray, 480.

VI. The witness Ritter was asked, " What were new cornices of
brass worth in the city of Virginia on the fourteenth day of Novem-
ber, 1868 " ?   This was objected to as irrelevant, as not asking the
value of any particular character of cornices, nor of any cornices
destroyed by the fire.   The question before the jury was, the actual
value of the property destroyed, and not the value of something
else.   The question was therefore clearly obnoxious to the objec-
tions taken.

VII. The exclusion of Mrs. Reed's testimony was error.   The
identical point is decided in *Magill* v. *Kauffman*, 4 Sergeant &
Rawle, 316.

VIII. [The objections of counsel to the various instructions and
the grounds of their objections are stated in the opinion of the
court.]

IX. Touching questions arising upon the conditions of the poli-
cies, the contract of the parties should be enforced, and the court
has no power by construction to add to or take from it.   *Healy* v.
*Imperial Fire Insurance Co.*, 5 Nev. 274.


*Mitchell & Stone*, for Respondent.

I. So far as questions of fact are concerned, they were submitted
to the jury; and admitting that there was conflict of testimony, the

verdict would not be disturbed.    *Reed* v. *Reed,* 4 Nev. 394 ; *Carlyon* v. *Lannan,* 4 Nev. 156.

II. Defendant did not rely entirely upon the representations of plaintiff concerning the conditions of the property.    It had full knowledge of the condition of the building at the time of issuing the policies through its agent.    The house was in good order and repair with the wooden rear wall, and plaintiff did not suppress any fact relating thereto.

III. Plaintiff made a statement of his loss, and was told that it was all that was required, that it was all right.    It was sufficient unless there might be a technical defect, in which case it became the duty of the insurers to have notified plaintiff of such defect. The objection to pay was upon other grounds, and there was no objection to the sufficiency of the preliminary proof.    16 Wend. 385 ; 9 How. (U. S.) 390 ; 2 Peters, (U. S.) 25 ; 10 Peters, (U. S.) 507 ; Angell on Fire and Life Insurance, Sections 240–248, notes and authorities.

IV. As to the objection to the testimony of the witness Ritter, the record only discloses the question, the objection and ruling of the court.    Every intendment is in favor of the ruling, and the record showing the bare question among the alleged errors of law, without giving the evidence of the witness preliminary to the question asked, showing its irrelevancy, the point ought not to be entertained.    But the question was proper.    The question just before was as to the value of second-hand cornices, but the object of both questions was to bring before the jury the value of the article new and its value after being used, so that they might, from the testimony of other witnesses as to the use of it shown, ascertain the true cash value of the furniture.

V. The testimony of Mrs. Reed given on a former trial, she being out of the state, was properly excluded.    The substance only of her testimony upon a particular subject was offered, and it did not appear that it was the whole of what she testified on that subject. The principle itself of admittting such testimony is exceedingly dangerous, and the judge may exercise legal discretion as to the degree

of secondary evidence necessary.    Authorities cited by appellant; 1 Greenleaf on Ev., Sections 163–167.

VI. Instruction "A" was not erroneous.    The assured is not bound to state his opinions, or belief or conclusions respecting the facts communicated, nor to communicate matters which lessen the risk, or which are known or ought to be known to the underwriter, or which are equally open to both parties, or which are general topics of conversation, or are subjects of warranty.    2 Greenleaf on Ev., Section 397; Marshall on Ins., 453–473; *Green* v. *Merchants' Ins. Co.*, 10 Pick. 402.

VII. The construction of the terms " false declaring or affirming " in the policy was correct.    *Gerhauser* v. *North British and Mercan. Ins. Co.*, 6 Nev. 15; Angell on Ins., 260; *Levy* v. *Baille*, 7 Bing. 349.

VIII. Instruction " J " was properly denied, because it excluded from the jury the question of waiver of statement.

IX. The principle upon which policies are vitiated is that the underwriters are deceived.    It cannot be said defendant was deceived if it had knowledge of the condition of the property, whether the representations were true or false.

By the Court, GARBER, J. :

This is an action on two policies of insurance, issued March, 1868.    The plaintiff recovered $9,500.    The defendant moved for a new trial, which was denied.    The first question presented is, whether the evidence was sufficient to justify the verdict.    In deciding this question we are confined, of course, to the particulars specified in the statement, and in case of material conflict we must assume the facts to be as testified to on behalf of the plaintiff.

The particulars specified are in substance: 1st, That in procuring the policies, the plaintiff misrepresented the value of the property, and concealed and misrepresented the true condition of the south and west walls of the building, and the value of the furniture in matters material to the risk, and unknown to defendant.    2d. That the plaintiff violated the first subdivision of

the conditions indorsed on the policies, by failing to describe truthfully, and by misstating the construction of the building and the materials of which it was composed, and particularly by stating that the building was in good order and repair. 3d. That the policy was issued on a "brick building," represented to be in good order and repair; but as part of the walls was of wood, it was not as represented, and was not the property insured. 4th. That no statement of his loss by destruction of the building was made by plaintiff, as required by the eleventh subdivision of said conditions, and that he was guilty of fraud and false declaring in making his statement of loss by destruction of the furniture. 5th. That the jury overestimated the value of the property burned.

The testimony as set forth in the statement shows that in 1864, and ever since, one Harvey was the agent of the defendant, clothed with and exercising full power and authority to manage and transact all its business. He resided in Virginia City, where the property insured was situated, until August, 1864, since which time defendant had no agent there until June, 1868, except that during a portion of the year 1866, it had a correspondent in that place, and that Harvey was there on a visit and saw the insured premises in March, 1865. In 1864, plaintiff first insured with defendant the house and furniture in question. This insurance was made after a personal inspection and survey by Harvey. Since then, from year to year, defendant has issued other policies insuring this property on the application of the plaintiff, at the office of defendant in San Francisco, the last being those in suit issued March, 1868. In May, 1865, in consequence of excavations made by the Savage Mining Company, the ground under the building began to settle, and settled to such extent as to necessitate the taking down a portion of the rear wall. The plaintiff concluded to put up a temporary wooden wall, and May 14th, 1865, wrote a letter informing defendant that the foundation was settling and the walls weakened and crumbling, and that it was necessary to put in a temporary wooden wall. To the erection of this wooden wall, to remain only until the building could be repaired, the defendant consented, requesting to be informed how long it would take to complete the repairs; and stating that an

additional premium would be charged if it took more than fifteen days. May 19th the plaintiff replied to this, that he had completed the removal of the portion of the wall which he intended to remove, and was then erecting in its place a wooden wall; that he could not say when the brick wall would be restored, as the foundation had been settling, and he preferred to let the wooden wall remain until the foundation became firm and secure, and to pay the additional risk required to allow the policies to cover the building in its changed condition. To this defendant agreed, and plaintiff continued to pay the additional risk until March, 1866, when the policies were renewed, the premium being fixed at $2\frac{1}{4}$ per cent., to be reduced to the rate of $1\frac{1}{2}$, the same charged on the first policies issued, when the rear wall should be rebuilt of brick. In March, 1867, the policies were again renewed, without question as to the condition of the wall or building, at a premium of 2 per cent. In the summer of 1867 a portion of the south wall fell in, and was replaced with wooden studding and boards. Up to March, 1868, the settling had continued, and the building had become considerably racked, and the furniture had, of course, depreciated in value by time and use. What occurred when the policies sued on were issued is matter of dispute. Harvey testifies that he then knew nothing about the condition of the building, except what the plaintiff then told him, and what he had learned from the correspondence, and a diagram received from plaintiff in March, 1865, showing the alterations in the rear wall; that plaintiff said nothing about the change in the south wall; that when plaintiff applied to him for this last renewal, he, Harvey, said: " You have been paying a high rate. Have you put your building in proper repair?" That plaintiff answered that he had, and Harvey then told him that he would reduce the rate to $1\frac{1}{2}$ per cent.; that nothing was said about the condition or value of the furniture; that " according to the customs of the insurance business, all houses having part of the walls wood, are classed as wooden buildings, and not insured, if at all, under 2 per cent."; that he did not reduce the rate on account of competition, and did not tell plaintiff so. The plaintiff testified that he told Harvey of the change in the south wall, and that he told him the building was in good repair, and so considered

it with the wooden substitutions; that Harvey gave as a reason for lowering the rates, the competition then existing, and that Harvey made out the policies and sent them to him from San Francisco.

The first subdivision of the conditions reads: "Every person desirous of effecting an insurance must state his name, place of abode, and occupation; he must describe the construction of the buildings to be insured, where situate and in whose occupation, of what materials the same are respectively composed, and whether occupied as private dwelling houses or otherwise; also the nature of the goods or other property on which such insurance is proposed, and the construction of the buildings containing such property, and whether there be any apparatus in or by which heat is produced, other than grates in common fire-places, in any of the said buildings or connected therewith. *Any misstatement in the above particulars will vitiate this policy.*" Harvey also testified that if plaintiff had applied to any one else in the office, a written statement under this subdivision would have been required of him; but that when the application was made to him, it was his habit to dispense with such writing.

It cannot be denied that persuasive arguments can be and are adduced to prove that the version of Harvey is the more probable; but much can be said in favor of the conclusion reached by the jury, and approved by the able and experienced judge before whom the case was tried. Giving credence to the version of the plaintiff, it shows that he was guilty of no misstatement whatever. It is true, he stated that he had put the building into good repair, but he also informed the agent, in the same conversation, that a portion of the south wall had been removed and replaced by wooden studding, &c. Both Harvey and the plaintiff were well aware of the condition of the rear wall, and that the foundation had been settling. The plaintiff may have been mistaken in thinking that the building was in good repair, or he may have answered the question without duly weighing the import of the language used; but coupled with the distinct statement as to the condition of the south wall, and construed in the light of the previous correspondence, it is not easy to see how Harvey could have been misled by

the answer. If, as counsel argue, it is a solecism to say that a building with its south and rear walls in the condition described is in good repair, then, taking the whole conversation and construing it in connection with the previous communications, it did not amount to a representation of good repair. No more than an assertion that one is a thief, because he stole a tree, amounts to an imputation of larceny.

In support of the specification that the plaintiff was guilty of concealment, it is urged that he failed to state the fact that, owing to the condition of the furniture, it was worth less than the sum for which it was insured, the fact of the unrepaired condition of the rear wall, and the "generally racked, cracked and unsafe condition of the building." But the jury may well have found that there was no concealment. Harvey had seen the furniture, and must have known that it had deteriorated in value by four years' wear and tear: and when he was told of the condition of the south wall, he must have inferred that the settling had continued, and that the rear wall had never been rebuilt of brick. If he desired further information on these points, it became his duty to ask for it, when thus fairly put upon his guard. As to the value of the furniture, there is a plain conflict of testimony.

It is argued that the description in the policies amounts to a warranty; that they describe this as a "brick building"; that the warranty was broken, as the walls were partly of wood. We may, in considering this point, leave out of view the evidence of custom or usage relied upon by appellant. The only testimony tending to establish the custom was the general remark of Harvey, above quoted. There is nothing to show that such custom was so general or uniform, or of such notoriety or acceptance, that the plaintiff can be presumed to have known of, or to have contracted with reference to, its existence. See also *Treadway* v. *Sharon, ante.* We think the description was inserted, not by way of warranty, but to identify the premises. If, on the face of the writing, there is room for construction or doubt, the benefit of the doubt must be given to the assured. It has been well said, that such clauses in a policy should be so framed that he who runs can read; that as such contracts are often entered into with men in humble conditions of life,

13

who can but ill understand them, it is clear that they ought not to be so framed as to perplex courts and lawyers, and so that no prudent man can enter into one without an attorney at his elbow to tell him what the true construction of the document is. And if a warranty, it has not been proven untrue. In common parlance, this was a "brick building"; and we must give to the language that meaning which plain and unlettered men usually attach to it. But the verdict can be supported on another principle. In 1 Smith's Leading Cases, pp. 789–791, it is said: "The better opinion would seem to be, that whenever the error of which the insurers seek to take advantage is occasioned by them or by those for whom they are responsible, they will be equitably estopped from setting it up as a defense, whether it occur in a representation or a warranty." If, then, plaintiff told Harvey of the wooden studding in the south wall, and if that amounted to telling him it was a wooden building, Harvey should have so described it in the policy. The company was responsible for his omissions, and cannot avoid liability by reason of any discrepancy between the facts as disclosed to him, and his presentation of them in the papers. It cannot saddle the blunder of its own agents on plaintiff, and thus take advantage of its own wrong. *May v. Buckeye, &c.*, 25 Wis. 291; 4 R. I. 141; 3 Keyes, 91; 50 Penn. 331; 40 N. H. 333–375; 29 Conn. 10; 50 Ill. 111. This harmonizes with the general rule that "when a purchaser is acquainted with the real nature of that which he purchases, he cannot rely on a failure to accord with the representation or description given of it by the vendor, as a breach either of a warranty or of the substance of the contract."

The eleventh subdivision of the conditions, after providing that plaintiff should make proof of his loss, declares a forfeiture in case of fraud in the claim made for such loss, or false declaring or affirming in support thereof. In due time, plaintiff made a statement of his losses. In it he valued the furniture "at about $6,000 coin, having cost said sum within the space of four years anterior to the date of the hereinafter described fire." This statement also alleged that he was the holder of the policy on the building, as well as of that on the furniture. A few days after the fire, plaintiff was in the office of defendant in Virginia City. The agent of defendant sug-

gested to plaintiff that a statement of his losses be made, and accordingly he made the statement referred to. The agent then told him it was all that was required, and was all right.

In order to work a forfeiture under this ·subdivision, the false statement must be wilfully made with respect to a material matter, and with the purpose to deceive the insurer. *Marion* v. *Great Republic, &c.*, 35 Mo. 148. Applying this rule of law to the testimony, I cannot say that the jury came to an erroneous conclusion on this point. The statement was evidently intended to embrace both policies; and if it was technically defective in this regard, fair dealing required the defendant to point out the defect. On the contrary, there is evidence that the agents of defendant expressly waived any further statement, and induced the plaintiff to rely upon that furnished. The law is well settled in this respect, and settled in accordance with the plainest dictates of reason and conscience. 14 Md. 295; 2 Ohio St. 476; 32 N. Y. 441; 20 Grattan, 312.

Some of the authorities seem to hold that where the verdict finds the value of the property to be only one-third or one-half the valuation in the statement of loss, the verdict should be set aside as itself evidencing fraud, etc., in the statement. Here the verdict fixes the value of the furniture at $3,000, but the statement gives it as $6,000. But this cannot be law. The verdict is compounded of the varying estimates of twelve men, made on conflicting statements of witnesses; it is often the result of a mere compromise of opinions; it will stand, though based upon evidence evenly balanced by evidence corroborating the statement. To hold it conclusive, not only of an overestimate but of a fraudulent overestimate, is altogether too arbitrary and harsh a rule, especially where the same finding, as here, negatives the existence of actual fraud, and the valuation in the statement is not positive, but is in terms the expression of an opinion deduced from given facts. Of course, there may be cases where the overvaluation is so glaring that the disproportion will amount to proof of fraud; but it is every day's experience that honest men will honestly differ as to the value of such property as that here in question, to a greater extent than this verdict differs from the statement.

The remaining assignments are of errors in law. The court al-

lowed the witness Ritter to answer a question objected to by the defendant. But the statement fails to disclose what the answer was. So far as the record informs us it may have been harmless. " It is not sufficient to show that an improper question was asked a witness, unless it also appear that the answer thereto disclosed improper and illegal·testimony, and to the prejudice of the party objecting." *Mays* v. *Deaver*, 1 Clarke, (Iowa) 222; 8 Iowa, 160 ; *Johnson* v. *Jennings*, 10 Grattan, 1.

It appeared on the trial that this case was once before tried in the same court, judgment rendered, and reversed on appeal; That on the former trial a Mrs. Reed was examined as a witness for defendant, and cross-examined by plaintiff; and that at the time of the second trial she was residing in the state of California. Defendant proved by plaintiff's counsel, that the statement of the testimony of Mrs. Reed, as contained in the statement used in this court on the former appeal, was correct, and the substance of what she testified to on the former trial. It being conceded that said testimony was relevant and material, counsel for defendant asked leave to read to the jury a portion of said Reed's testimony from the transcript thereof used on said first appeal—which portion is set forth in the record now before us. Plaintiff objected, and the objection was sustained. All the cases agree that the testimony of a deceased witness, given on a former trial of the same cause, may. be proved as secondary evidence—as the best evidence of which the nature of the case admits. But there is a decided and irreconcileable conflict of authority on the question whether, as a foundation for the admission of such secondary evidence, the absence of the witness from the state is equivalent to his death. In *Lightner* v. *Wike*, 4 S. & R. 204, Chief Justice Tilghman said that the rule of admitting evidence of what a deceased witness swore is founded upon necessity, and is an exception from the general rule, which demands the examination of a witness *viva voce*, and must be extended no further than necessity requires. In *Magill* v. *Kaufman*, Ib. 319, the same judge extended the exception to the case of a witness absent from the state. He admitted that he could find no express decision on the point, but held that as the handwriting of an absent subscribing witness may be proved, to

preserve consistency, the absence of a witness from the state should
be considered the same thing as his death; and that, if the ad-
verse party desires to prevent the use of the secondary evidence,
*he* should send a commission to examine the witness.    Soon after,
in *Wilbur* v. *Selden,* 6 Cowen, 164, the contrary was held, and it
was said that the rule as to a subscribing witness was not at all
analogous in principle.    And the same ruling has been made in
other states.    17 Ill. 427 ; 5 Rand. (Va.) 708; 14 Mass. 234;
2 Blackf. (Ind.) 308.    In Cowen & Hill's notes, and in the text
of Greenleaf, a decided preference for the Pennsylvania doctrine
is expressed, and it has been established in other states either by
statute or judicial decision.    With all deference to such authority,
we think it the safer and better rule, that where the residence
of the witness is known, or can be discovered by the exercise of
due diligence, and his testimony can be taken by commission, evi-
dence of what he swore on a former trial should be excluded.
It will not be denied that his deposition is the primary and best
evidence—the necessity for a resort to secondary evidence does not
then exist, as in the case of death, and we can see no reason why,
in order to escape from the dangers and abuses incident to the use
of the secondary evidence, the duty of suing out a commission
should be cast upon the adverse party, rather than upon the party
seeking to avail himself of the testimony of his own witness.    The
analogy relied on by Judge Tilghman is by no means perfect.    In a
late English case, where it was pressed as an argument in favor of
the admission of secondary evidence of the contents of a document
beyond the jurisdiction, Creswell, J., said :  "It is not on the
ground that his is the *best* evidence, that the attesting witness, if
procurable, must be called ; but because he is the witness agreed
upon between the parties."    The rule requiring proof by a sub-
scribing witness has long been regarded as a useless formality,
adhered to only because courts had no power to dispense with set-
tled rules of law.    But that requiring the production of the best
evidence is one of substance and wise policy.    The former is to be
extended no further than strict precedent requires—the latter is
dispensed with only in case of necessity, and in the absence of
precedent is to be applied to all cases falling within its reason.

Even in Pennsylvania the analogy is not always followed. Thus, they reject the testimony of a witness given on a former trial in case of supervening interest, which, however, they admit will enable the party to establish the execution of a document by proof of the handwriting of a subscribing witness. So if the attesting witness has forgotten the facts or refuses to testify, this will let in proof by other witnesses. 1 Starkie Ev. 510. But such forgetfulness or refusal is not a sufficient foundation for the introduction of testimony given on a former trial. 43 N. H. 297. If admissible, the whole of the testimony of Mrs. Reed should have been offered ; and it seems it should have been shown that Mr. Mitchell had forgotten what her testimony was. 48 N. H. 282 ; 17 N. Y. 138 ; 9 Rich. Eq. 429 ; 15 N. Y. 485 ; 22 N. Y. 462 ; 46 Barb. 410. Perhaps, too, the rejection of the transcript may be justified on the ground that it was not a memorandum made by the witness Mitchell, nor one made at or near the time when he heard Mrs. Reed testify. It is rested, however, on the first ground, for the reason that it is claimed that the objection made by the plaintiff in the court below was so limited, and the argument on the point made by the appellant, that he cannot take a different position in this court, has been altogether *ex parte*.

The first instruction given reads : " A." " It is not sufficient to aver that, when the application for insurance was made, the insured concealed a fact material to the risk, and which would have increased it if known. It must also appear that the insured knew of the existence of the fact. It is not every fact within the knowledge of the insured that he is bound to disclose, and if such facts as the law or the policy will require him to disclose are within the knowledge of the insurers, or so connected with the property insured that its knowledge may be fairly inferred, a failure to inform the company thereof will not avoid the policy." The defendant excepted generally to the giving of this instruction, and each part thereof, and especially upon the ground " that so much of said instruction as held that it was not the duty of the plaintiff to communicate to defendant all matters material to the risk, was not law ; and also to that portion of it which referred both to the knowledge of the plaintiff and the defendant, because the same was not perti-

nent to the testimony and was calculated to mislead the jury, it appearing from the testimony that the plaintiff was perfectly familiar with the condition of the property, and that the defendant knew and could know nothing about it, except as informed by the plaintiff." Instruction " B," which was objected to on the same grounds, was to the effect that, if plaintiff failed to disclose the condition of the building, but defendant knew its condition, such failure worked no forfeiture.    Instruction " A " is certainly obnoxious to criticism ; but we do not think the action of the court below in overruling the specific  exceptions  taken  constituted  such technical error as to warrant a reversal of the judgment.    In *Axtel* v.  *Caldwell*, 24 Penn. 90, the instruction was, that a refusal to deliver certain property would dispense with a demand ; and the plaintiff in error contended that, in the absence of evidence to show a refusal, it was an error fatal to the judgment to speak of a refusal at all in charging the jury.    It was held that the instruction was a true expression of the law in the abstract—that when jurors are told that a given question is to be determined by them, this is called submitting the fact to the jury ; and if the record show that there was no evidence, direct or presumptive, of the existence of such fact, such submission is error ; because it is tantamount to a charge that there is some evidence of the fact.    That the instruction did not submit the question of refusal to the jury, but simply stated a legal principle which had nothing to do with the case.    The judgment was therefore affirmed.

Here, the portions of the instruction excepted to substantially assert that the mere failure to disclose material facts, known to the insurers or unknown to the insured, would not prevent a recovery. This is correct as an abstract proposition.    It was pertinent to the testimony, so far as it referred to the knowledge of the defendant, and it did not submit the question of the knowledge of the plaintiff to the jury.    Further, we are satisfied the jury could not have been misled by the portions of the instruction especially excepted to.    They were afterward specifically and correctly instructed on the hypothesis of a concealment of any material fact.    3 Gr. & Waterman, Chap. X, 792–800.    The questions raised by the assignments of error in giving the instructions marked " D," " C "

and " E," have already been considered.   Instruction " J " was
properly refused, as taking from the jury the question, whether
defendant waived the statement required by subdivision eleven.

There was no error in refusing to give instruction " K."   It
was to the effect that if the plaintiff, in procuring the policies, rep-
resented the building as a " brick building" in good order and
repair, and if one-fourth or more of the rear wall was composed
entirely of wood unprotected by brick, then the building was not
according to the true meaning of the term a " brick building,"
and the jury must find for defendant.   The question whether the
representations made by the insured are materially untrue, or
untrue in some particular material to the risk, is a question of fact
for the jury.   Besides, there was no evidence that the plaintiff at
the time of applying for these policies represented the building as
a " brick building."   The instruction was so framed that it might
lead the jury to believe that they must find the plaintiff guilty of a
fatal and material misrepresentation, even if he informed defendant
of the change in the south wall.

Instruction " L," requested by the defendant and refused by
the court, is more objectionable in this respect than instruction
" K."   It reads :  " L."   " If the agents of defendant knew, prior
to the issuance of the policies sued on, that the brick wall, to the
extent of the south half of the rear wall of said building, had been
removed, and a wood wall had been substituted therefor, and they
had not seen the building for some time prior thereto, and the jury
believe from the evidence that, at the time of procuring said
policies, the plaintiff told the agent of defendant from whom he
procured them, that he had put said building in perfect repair,
then they must find for defendant, it being admitted that said wall
remained in that condition at the time of the fire."   This was
properly rejected, as liable to mislead the jury to the conclusion
that they could not find from the whole conversation, as probably
intended and understood by the parties, that Harvey was suffi-
ciently informed of the true condition of the property—as exclud-
ing from the consideration of the jury the plaintiff's testimony that
he told Harvey of the change in the south wall.   21 Md. 551 ;
27 Mo. 70 ; 20 Ill. 395.

Defendant requested the instruction marked " M," viz : " If none of the defendant's agents, nor any person acting for defendant, had seen the building * * * for several years prior to issuing the policies, and in issuing them defendant's agent relied entirely upon the plaintiff's representations as to the condition and state of repair of said building, and the jury believe the plaintiff then misrepresented the condition and state of repair of said building, in matters material to the risk, they must find for defendant, *even though they believe that plaintiff made such misrepresentations by mistake instead of design."* The instruction as offered was refused, but was modified by striking out the words italicized, and was given as modified. The defendant " excepted to the refusal to give said instruction as offered by defendant, and to modification of the same by the court." It is not the right of counsel to require the court to repeat and reiterate the same proposition. It is sufficient if the whole series of instructions, when read in connection, correctly express the law as requested. Reading this instruction as modified, in connection with the instruction marked " 14," and given at the request of defendant, it will be seen that the jury were instructed substantially, if not literally, as requested. They were told by instruction " 14 " that false representations concerning the state of repair of a building, in matters material to the risk, made by the plaintiff and relied on by the defendant, are as fatal to the right of recovery when made by mistake as when made by. design ; and the only misrepresentation which the evidence tended to prove, was one concerning the state of repair of the house. The modification was made by passing through the words rejected one stroke of the pen, leaving them still legible, and in that condition it was handed to the jury. If it was feared that this might mislead the jury, the attention of the court should have been called to the fact, and a specific exception taken in case of refusal to allow the instruction to be rewritten or the rejected words to be obliterated.

The defendant requested the court to instruct as follows : " N." " If the jury believe from the evidence that plaintiff in 1867 substituted timber and cloth for eight inches of brick wall on the south and inside of his building, embracing a space of fifteen feet or more

in length and extending from floor to ceiling; and that he concealed the fact from defendant, either by design, accident, intentional neglect or mistake, and the defendant's officers issued the policy sued on in ignorance of such change in the wall, then they must find for defendant, *because such change was material to the risk and ought to have been brought to the knowledge of defendant, some officer or agent of defendant, before the issuance of the policies.*" This was modified by striking out the last thirty-one words, and by inserting after the word " ceiling" the words " and that the said condition of the building was material to the risk." The error assigned is that the court erred in refusing to instruct that the change in the south wall was material, and in leaving it to the jury to find whether the condition of the building resulting from the change was material. The questions raised by this assignment are not free from difficulty, but we think the ruling is sustained by principle and by the weight of authority. 18 N. Y. 170; 39 N. Y. 59; 6 Jones, (Law) 352; 40 N. H. 381; 20 N. H. 557; 18 Ind. 361; 2 Parson's Contr. 770. It is not contended that the answer here relied on was a warranty, nor is it denied that, as a general rule, the materiality of a representation is a question of fact to be submitted to and decided by the jury; but it is contended that the plaintiff, in answer to a specific question, represented the building to be in good repair: that the instruction was framed on the hypothesis that the change in the south wall was made and concealed; that the truth of this hypothesis is inconsistent with the truth of the representation; and that, under the circumstances, the materiality of the representation and of the variance between the representation and the fact was a question for the court and not for the jury, because the parties had made the representation material by asking the question to which it was an answer, and by inserting in the condition indorsed on the policy a provision that it should be vitiated by any misstatement as to the construction of the building or the materials composing it; and because there could be no dispute on the evidence whether the change in the wall increased the risk; that the court should have assumed that it would be thereby increased, wood being necessarily more combustible than brick and mortar.

It is undoubtedly competent for the parties to decide for themselves and beforehand what facts or representations shall be deemed material, and where they have so agreed, the agreement precludes all inquiry upon the subject. This they may do by converting the representation into a warranty, or they can, by the form of the contract, stipulate as to its materiality without, however, putting it in other respects on the same footing as a warranty. Here they have not seen fit to make the answer a warranty, which could only be by making it in legal effect a part of the policy.

A warranty—like a covenant, fixing and liquidating the *quantum* of damage—will not be created nor extended by construction or implication. For like reasons, the intention of the parties to conclude by convention the question of the materiality of the answer or representation should be clearly manifested; and in case of doubt, the doubt is to be resolved in favor of the insured. So far as this contract has been reduced to writing, the intention to make the answer material depends solely upon the construction of the proviso concerning misstatements; and this, according to established rules, is either inoperative, as the expression of what is tacitly implied, (98 Mass. 393–4; 12 Cush. 425) or it operates to exclude things which, but for this expression, would have been implied. Had the parties here, as in some of the cases cited, by their contract stipulated for the materiality of this answer—had it been written out, and referred to in the proviso—then, the interpretation of all writings being for the court, the question of the materiality of the answer could not have been left to the jury. But the contract here, by legal intendment, is, that the policy should be vitiated by any material misrepresentation. Ordinarily, in the absence of fraud and mistake, written contracts cannot be controlled by antecedent or contemporaneous statements, not embraced in the writing; but in actions on policies of insurance, a recovery may be prevented by proof of verbal representations, which, though undesigned, *were material to the risk.* In such case, the burden of proof is on the defendant, to show that the plaintiff made the representation, that it was material, and that it was untrue in substantial and material particulars. Cases are cited to show that when the defendant proves that a question is asked by the insurer and an-

swered by the insured, the court must instruct that the answer is material. The reasoning by which this result is reached, is thus stated in one of the opinions: "An inquiry made by the insurer, shows that he deems the matter inquired about material—an answer by the insured admits the materiality. It is an agreement that the matter inquired about is material, and therefore the materiality of such answers cannot be submitted to the jury." It may be questioned, whether the fact that an inquiry is made and answered is anything more than evidence tending to prove materiality, and it can hardly be deemed equivalent to a conclusive agreement that the answer shall be considered material. But, waiving this, the court can declare that the parties understood and intended that, upon the substantial truth of the representation, regardless of its materiality, the validity of the policy should depend, only when such understanding and intention can be deduced from the written evidence: if the contract is not wholly in writing, and such intention is to be collected from the acts and expressions of the parties, the jury must find it. Smith's L. C. 265. And so, it is said, (98 Mass. 402) that, where the materiality of a representation depends upon circumstances, and not upon the construction of any writing, it is a question of fact for the jury; but where the representation is in writing, its interpretation belongs to the court. It was further held, that even where, by the form of the policy and the contemporaneous written application, the parties conclusively agree to consider the representation material, it is still a question of fact for the jury to decide, whether the variance between the representation and the existing facts was material — the very question which, by this instruction as offered, it was proposed to take away from the jury.

In *Peterson* v. *Ellicott*, 9 Md. 60, the court say: "There is no principle better settled than that which denies to the court the right of assuming any fact, when the *onus* of proving such fact rests upon the party asking the instruction, no matter how strong and convincing his proof on the subject may be. * * The instruction should contain, *within itself*, a correct legal principle—whenever it undertakes to set forth facts as the basis of a legal proposition, the facts referred to must be sufficient to warrant the instruction asked

for, without any extraneous aid." The concealment of the change in the south wall, and the other facts set forth in this instruction, did not, in and of themselves, authorize a direction to find for the defendant; and the contention of counsel is, in effect, that the court below should have not only decided, as matter of law, that the parties had made the state of repair material, but should have assumed that the plaintiff had represented the building to be in good repair, and that it was not in good repair, because the parties meant by " putting the house in good repair," " replacing the woodwork with brick" — that this had not been done ; and that such variance was material. That is, that it not only increased the risk, but so increased it that, if known, it would have enhanced the premium, or prevented the insurance. 20 N. H. 551; 8 B. Mon. 642; 30 Mo. 67.

The point now presented is not whether, if these questions had been submitted to the jury, a finding contrary to the assumption requested would have been against the evidence, or the weight of evidence. Nor is it necessary for us now to go so far as to say, that none of these facts — for instance, the representation of good repair, a conceded fact in the case — could have been assumed in aid of the prayer. But it was not error to refuse to assume other of these facts. Harvey had insured the property for the same amount in 1867, when (the jury may have found) he had every reason to believe it was in substantially the same condition, so far as concerned the risk ; and though the rates were reduced in 1868, the jury may have attributed that to the competition then existing, as testified to by plaintiff. That counsel have correctly interpreted the meaning attached by the parties to the words " good repair," is not self-evident nor undisputed. This was for the jury to ascertain, in the first instance, not simply in view of the conversation in which the expression was used, but from that conversation as explained by the previous correspondence and conduct of the parties.

The judgment and order should be affirmed, and it is so ordered.

After the rendition of the foregoing decision, a petition for rehearing was filed by defendant. In answer thereto, the following response was filed at the January term, 1872.

By the Court, GARBER, J. :

Four points are made in the petition for a re-hearing in this case. We have carefully considered the argument of counsel in their support, and the result is a conviction that the petition should be denied.

I. In regard to the testimony of Mrs. Reed, it is admitted that there is a decided conflict of authority on the point suggested. In view of this conflict, we are at liberty to adopt the rule which seems to us supported by the better reason. So far as there has been direct adjudication of the point, it is about equally balanced; and as now presented for the first time, in this state, it is practically of the first impression—as much so as it was when presented to the judges who decided the cases of *Magill* v. *Kauffman* and *Wilbur* v. *Selden.* Then going back to the law as it stood when *Magill* v. *Kauffman* was decided, we are informed, by the opinion of Chief Justice Tilghman, that there were three recognized exceptions to the general rule, viz : the death of the witness, that he could not be found after diligent search, and that he was kept away by the influence of the adverse party. By analogy to the case of a subscribing witness, he admitted a fourth exception—the absence of the witness from the state. We agree with the conclusion arrived at in *Wilbur* v. *Selden,* that the analogy was too imperfect to justify the engrafting of the last-named exception upon the law. Where the witness can be found and his deposition taken, neither *expediency* nor *necessity* requires the admission of hearsay as to his previous testimony; 4 S. & R. 204; 1 Nott & McCord, 409; he is not then " in the same circumstances as to the party that is to use him, as if he were dead "; 3 Bac. Abr. 561; and though the deposition falls short of an examination *viva voce,* it is superior to what a witness said at a former trial. Ib.

II. The point upon which we sustained the overruling of the objection to the question propounded to the witness Ritter, was distinctly made in the brief of respondent. In the reply, appellant impliedly admitted the correctness of the assumption of fact upon which the point was made, and contended that there was no rule of law requiring the answer to be preserved in the bill of exceptions. The statement, however, shows that the whole value of the cornices

testified to  could not have exceeded the sum  of  fifty-eight dollars.
Even if there  was  technical error  in  admitting the testimony, it
would not warrant a reversal of the entire judgment; but in support
of  the  judgment, we feel  justified in interpreting the statement as
showing that, in point of  fact, Ritter testified with direct reference
to the cornices he had seen in the house of the plaintiff.

III.   The third suggestion is answered by the case cited in our
opinion, which shows that the instruction did not submit to the jury
the question of the knowledge of either the plaintiff or the defendant.

IV.   It is now contended that the modification of instruction "M,"
was error, because of the failure of the  court to inform  the jury
that the concluding sentence was stricken out *for the reason* that it
had already been given.    Criminal cases decided in this state and
California are cited to sustain this position.    1 Nev. 35.     What
was said on this subject in *People* v. *Bonds,* was wholly unnecessary
to the decision.    But admitting that such is the law in criminal
cases, we think a different practice has always prevailed and should
prevail in the trial of civil causes.    36 Ill. 212; 36 Mo. 162; 14
Iowa, 370;  41 Penn. 242;  15 Texas, 400;  42 Maine, 564; 30
Miss. 120;  11 Md. 451;  8 Blackf. 98;  3 Dana, (Ky.) 36; 1
Black. (U. S.) 537.

In criminal cases, no specific exceptions to the  charge are re-
quired.    In civil cases, the point of the exception must be particu-
larly stated ;  and  where the whole charge correctly states the law
as requested, a party cannot assign for error  any mere ambiguity
in the instructions, or that they were calculated to mislead—no
erroneous proposition of law being asserted—unless he ask an ex-
planation of them to the  jury  at the time they are given.    35
Ala. 653; 23 Ill. 380; 23 How. (U. S.) 189; 20 Texas, 226; 28
Ala. 641; 10 Ind. 90; 9 Ala. 63; 19 N. H. 377; 5 Met. (Mass.)
151; 19 Pick. 311.

Counsel ask " how could we object to a particular mode of modi-
fication of which we were wholly ignorant "?    It seems to us that
nothing could be easier than to have made the specific objection in
this case.    They knew that the  concluding sentence was not given
as part of this particular instruction.    They knew  that this sen-

tence had been given in another instruction. They therefore knew that there was a good reason for striking it out, and they knew that this reason was not stated to the jury. They had no reason to suppose that the judge had taken it upon himself to erase the sentence refused, and thus to deprive them of the means of presenting to this court or to the court below, on motion for a new trial, the written evidence of what their request was. It was not to be presumed that the judge in the hurry of the trial would undertake to re-write the instructions. If, then, there was reason to fear that the jury would be misled—if, by reason of the failure to state the reason of the modification, the charge was ambiguous, and by reason of such ambiguity the jury were liable to infer that in the opinion of the court the portion of the instruction refused was not law, why not request the desired explanation, and in case of refusal, state then and there the particular point of exception? It seems to us that every reason of the rule requiring such particularity fully applies, and that upon an exception which goes to the extent of denying the propriety of any modification whatever, it cannot be urged on appeal that a modification confessedly proper was not accompanied with an explanation which was never requested. The petition must be denied, and it is so ordered.